MANN *v.* HAMILTON COUNTY BOARD OF ELECTIONS ET AL.

[Cite as Mann v. Bd. of Elections (1973), 37 Ohio Misc. 3.]

(No. A-736577—Decided September 18, 1973.)

Court of Common Pleas of Hamilton County.

*Mr. David S. Mann, pro se.*
*Mr. Arthur M. Ney,* assistant prosecuting attorney, for defendants.

NURRE, J. This matter comes before the court on the complaint of the plaintiff herein and his request for injunctive relief. By stipulation of counsel, upon motion for the defendants, the hearing was consolidated to include both the merits along with the request for preliminary or temporary restraining order. In addition to their answer herein defendants have filed a motion to dismiss the complaint and it was subsequently agreed upon by counsel that such motion would be considered along with the merits upon the conclusion of such hearing.

In an effort to proceed logically, the court will first review defendants' motion, in that if such motion is well taken it would be dispository of the matter and further consideration would be unnecessary or at least unenforceable by law.

Defendants in their motion to dismiss the complaint suggest in paragraph (A) of that motion that the court lacks jurisdiction over the subject matter of the action. To support this proposition defendants state that the Sec-

retary of State and the board of elections must by law administer the election law and the courts have no jurisdiction or may not interfere unless there is fraud, corruption, flagrant misinterpretation of a statute, or a clear disregard of legal provisions. (See defendants' memorandum page 3, paragraph 1.) As is stated by plaintiff in his brief, paragraphs 1 and 2, page 2;

"Plaintiff does not disagree with defendants that a basis for judicial review of a decision of a board of elections is disregard of a statutory provision."
and,

"The assertion of an act which is illegal under a specific statutory requirement is certainly sufficient to invoke the jurisdiction of this court."

The court feels that the complaint sufficiently invokes jurisdiction by virtue of its allegation regarding the clear disregard of legal provisions, namely R. C. 3501.18.

The defendants in their motion to dismiss the complaint in paragraph (B) of that motion, state that the plaintiff has failed to state a cause of action upon which relief can be granted. In their effort to support this contention defendants point out that:

"The plaintiff has failed to demonstrate a clear legal right for equitable relief. Certainly the plaintiff has no vested right to vote in a particular precinct nor at a particular polling place, and while he does have the right to vote, this is a political right which in the absence of Statute normally is not protected by equitable relief. The general rule is set forth in 26 Am. Jur. 2d Elections, Section 369 as follows:

" 'Since the right of suffrage is political, the accepted rule is that its assertion and protection are not properly matters for the cognizance of courts of equity. The extraordinary jurisdiction of courts of chancery cannot, therefore, ordinarily be invoked to protect the right of a citizen to vote or to be voted for at an election or his right to be a candidate for, or to be elected to, any office. Nor can such jurisdiction be invoked for the purpose of restraining the holding of an election or of directly or controlling the

mode in which, or of determining the rules of law in pursuance of which, an election shall be held.' "

Additionally, defendants state that in essence the plaintiff has not stated in his complaint how he will suffer irreparable damage through the actions of the defendants. The plaintiff in reply to these allegations states that as an elector he has a right to participate in an election free from illegal acts which affect voters, and as a candidate he is entitled to have his name presented to the electorate without the burden of illegal precincts. It is clear that the form of the pleading and subsequent proof do not bring this action within the scope of a "class action" as prescribed by Rule 23 of the Ohio Rules of Civil Procedure. This is so even though paragraphs 7 and 8 of the plaintiff's complaint strongly suggest that the rights of certain classes are a prepondering consideration. Suffice it to say that in order for a law suit to succeed as a class action certain procedures must be followed and certain prerequisites met. The instant action is brought individually by David S. Mann in his capacity as a private individual and candidate and cannot be considered under any stretch of legal prowess as being a class action. It is however the opinion of the court that the plaintiff as a voter and as a candidate states a cause of action upon which relief can be granted provided that such allegations and the complaints are sustained by the merits.

This being the case the court would proceed to the merits. The sole evidence afforded are the exhibits stipulated by counsel along with the testimony of Mr. Daniel Ruehlmann, the Director of the Hamilton County Board of Elections and Mr. Paul Rosenberg a citizen of this community and manager of the councilmanic campaign for Mr. David S. Mann.

It is argued by counsel for the defendants that plaintiff has no standing as a representative for the poor, the old or the infirm and the court feels this argument is well taken, *supra, re* class action. It is further argued by defendants that plaintiff's constitutional rights as an individual and as a candidate have in no way been violated.

6

It is precisely this question which the court accepts on the merits herein. The courts never have and hopefully never will take lightly or capriciously the individual electors' right to exercise his franchise.

Plaintiff contends in his complaint and reply memorandum that by virtue of the interpretation placed upon R. C. 3501.18 and 3506.16 and in light of other related statutes that the Board of Elections has violated his constitutional rights as an individual and as a candidate; and that the board acted illegally in realigning precincts without consideration of the provisions of R. C. 3501.18 allowing,

"Each precinct shall contain as nearly as practicable not more than 400 nor less than 250 electors."

The court disagrees with the merits of that proposition. Plaintiff states on page 3, paragraph 3, of his reply memorandum:

"The position put forth by the defendants must rest upon some legislative purpose for Section 3506.16 superseding the size restraints of Section 3501.18 and making them inapplicable in a voting and tabulating equipment jurisdiction. Defendants have suggested no such purpose and none comes to mind. On the contrary, there are a number of reasons why it must be concluded that the legislature would wish the size restrictions of Section 3501.18 to be applicable throughout the state whatever the method of voting."

Defendants' stipulated Exhibit No. 9 is a letter from the Secretary of State to the local board of elections dated 2/7/73 which refutes this contention and in part specifically states,

"probably a good precinct size for counties using voting machines or marking devices is a precinct of 450 to 500 electors, giving due consideration to the number of electors which each unit of equipment can accommodate."

Plaintiff's contention regarding the size restrictions of R. C. 3501.18 in its relation to Sections 3517.03, 3515.03 and 4301.32 of the Ohio Revised Code is well taken; however, the court interprets the words, "as nearly as practicable," as sufficient authority for the board to realign as they have,

especially when considered along with R. C. 3506.16 which provides that:

"The board of elections, in counties where marking devices are in use or are to be used may combine, rearrange, and enlarge precincts and it may assign all or part of the electors of a precinct to an adjoining precinct at an election for purposes of voting * * *."

This is not to say that this board of elections or any other in the state may arbitrarily expand or limit precincts beyond the confines of R. C. 3501.18, but that they may do so when coming within the confines of R. C. 3506.16 and the "nearly as practicable" provision of R. C. 3501.18.

Defendants in their answer, brief, evidence elicited from Mr. Ruehlmann and argument raise the question of lack of time (55 days) to realign in accordance with plaintiff's demands. The court in lieu of its position taken herein (above) finds it unnecessary to broach this argument other than to say that it has merit and had this court decreed mass realignment in accordance with plaintiff's complaint that it would be done only after the upcoming November election. To do otherwise would seriously disrupt that upcoming election according to all and the only evidence before the court.

Defendant raises in his answer in paragraph numbered 6 the fact that the Secretary of State of Ohio is the chief election officer of the state and has participated in the actions of which the plaintiff complains. As a result the court feels that the secretary is a proper party to these proceedings, however, not indispensable. (Ohio Rules of Civil Procedure, Rule 19.) Had the court felt inclined to grant the substantial portion of plaintiff's complaint, this court would have ordered plaintiff to join the Secretary of State as a party and continued this matter in order to give him the opportunity to answer this complaint. However, in lieu of the time problems already stated herein, it is the court's opinion that such delays would be detrimental to all parties involved.

Plaintiff in his complaint requests in the alternative a number of other equitable measures; namely, that defend-

ants establish multiple polling places, publicize extensively change of precincts and post signs in polling places. Although defendants argue that plaintiff is not entitled to such relief because there is "no law requiring any of these actions and the court has no authority to legislate," the court feels that its equitable powers are broad enough to allow for such relief if there is clear showing of such need. The court accordingly finds from the evidence that the need for multiple polling places has not been proven and that the extensive publicity regarding change of precincts requested by plaintiff is not necessary in that the only evidence is that the board of elections will proceed to publicize in the local newspapers and make available all information to the other media (which it will hopefully publicize). The court does find from all the evidence, however, that plaintiff's demand that the defendants be required to post signs on all polling places used in the 1972 general election directing electors where they must vote in the upcoming general election has merit, is supported by the evidence and if not granted would be an irreparable violation of his rights as a citizen and candidate. Accordingly it is hereby ordered that defendants proceed to take the necessary steps to post signs at all polling places used in the 1972 general election directing electors where they must vote in the upcoming general election where practical and within the limits of reasonableness and the consent of the persons whose property may be involved.

Additionally the court strongly suggests, but does not decree that the board of elections and its agents; (1), on election day November 6, 1973, carefully scrutinize the precincts to the degree necessary and if it appears the increased numbers of voters created by the realignment and/ or any hardships created by distance or topography cause a substantial late vote in any precinct that the normal time of closing such precinct be reasonably expanded; and (2), that if after the November 6, 1973 election apparent hardships are endured so as to substantially effect the electorate, that further consideration be given to the reduction of the number of electors in each precinct and the location of those precincts.

*Let the order issue accordingly.*